RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0127p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

NPF FRANCHISING, LLC,

*Plaintiff*,

J. PATRICK ALLEN; KATHRYN B. FOX; RICK A. WALTMAN; TRACY A. WARREN; BUCHALTER, a professional corporation,

*Interested Parties-Appellants*,

*v.*

SY DAWGS, LLC; KTC INTERESTS, LLC; SCRAP YARD FAST PITCH, LLC; CONNIE A. MAY; JOEL A. BARTSCH,

*Defendants-Appellees*.

No. 21-3516

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:18-cv-00277—Donald C. Nugent, District Judge.

Argued: March 9, 2022

Decided and Filed: June 15, 2022

Before: McKEAGUE, BUSH, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** Edmond J. Mack, PLAKAS ǀ MANNOS, Canton, Ohio, for Appellants. William M. Harter, FROST BROWN TODD LLC, Columbus, Ohio, for Appellees. **ON BRIEF:** Edmond J. Mack, Lee E. Plakas, Lauren A. Gribble, Brandon W. McHugh, PLAKAS MANNOS, Canton, Ohio, for Appellants. William M. Harter, Yazan S. Ashrawi, FROST BROWN TODD LLC, Columbus, Ohio, for Appellees.

―――――――――

**OPINION**

―――――――――

JOHN K. BUSH, Circuit Judge.  In this appeal, which involves the National Pro Fastpitch League, we are asked to review a "foul ball" call in discovery.  The district court imposed sanctions under Federal Rule of Civil Procedure 37 against counsel for the league's franchisor, NPF Franchising, LLC (NPF), for failure to produce documents and its engagement in other discovery abuses.  We affirm the award of sanctions against the individual attorneys who represented NPF, but we vacate the award against their law firm.  Rule 37 does not allow for law-firm sanctions where, as here, the firm was not a party to the lawsuit.  We remand for further proceedings consistent with this opinion.

I.

The discovery issues arose from a lawsuit brought by NPF against a franchisee, SY Dawgs, LLC, which operated Scrap Yard Dawgs—one of the fast-pitch softball teams in the National Pro Fastpitch League.  The case concerned a franchise awarded in October 2015 by NPF to SY Dawgs.  NPF terminated the franchise in January 2018.  It then sought injunctive relief against SY Dawgs, alleging that the franchisee had solicited NPF's suppliers, sponsors, and media partners and had formed a new league to directly compete with NPF, all in violation of a non-competition agreement.  What followed were two-and-a-half years of discovery disputes and repeated sanctions motions.  Eventually, NPF voluntarily dismissed the lawsuit, and the district court granted SY Dawgs's last motion for fees and costs.  NPF now appeals that decision. We describe the pertinent litigation events below.

This case began in February 2018 with NPF's complaint against SY Dawgs for breach of their franchise agreement and non-competition and non-disclosure agreement.  About a week later, NPF amended its complaint.  After the district court denied NPF's motion for a preliminary injunction, NPF amended the complaint for a second time.  SY Dawgs then moved for attorneys'

fees, costs, and expenses, pursuant to a contractual fee-shifting provision.[1] SY Dawgs argued that it was entitled to monetary compensation because NPF was the "unsuccessful party" on its claim for injunctive relief. The district court denied the motion without prejudice as premature.

Around this time, in August 2018, NPF failed to appear at a status conference. At that conference, the district court noted that despite SY Dawgs having issued multiple subpoenas and responded to NPF's discovery requests, NPF had thus far refused to respond to SY Dawgs's discovery requests, with the discovery deadline two months away. SY Dawgs again moved for costs and fees, this time over NPF's non-attendance at the status conference. At the next status conference, on September 4, 2018, new counsel, the Buchalter Law Firm, appeared for NPF and vowed to produce all outstanding discovery. The district court granted motions to appear pro hac vice on behalf of NPF filed by Buchalter Law Firm attorneys Tracy Warren and Kathryn Fox around this time.

Later in September, SY Dawgs again moved to compel discovery and for sanctions. It stated that NPF had provided no interrogatory answers or documents in response to the requests that it served on June 20, 2018. SY Dawgs also noted that NPF refused to designate a representative for corporate representative depositions. The parties then had a status conference in early October, where NPF represented to the district court that it had turned over all the requested discovery. Relying on this representation, the district court denied SY Dawgs's motion for costs and fees but also expressed willingness to revisit the issue later. The district court also granted SY Dawgs's motion to compel discovery "inasmuch as [NPF]'s counsel has represented to Court and counsel that all requested information has been disclosed."

SY Dawgs moved for discovery sanctions yet again on October 25, 2018. It stated that NPF had failed to appear for a properly noticed deposition or produce any documents related to a subpoena. SY Dawgs also accused NPF of misrepresenting to the district court that it had

---

[1]The provision states:

> In any action at law or in equity to enforce any provisions or rights under this Agreement, the unsuccessful party in such litigation, as determined by the court in a final judgment or decree, shall pay the successful party or parties all costs, expenses and reasonable attorneys' fees incurred therein by such party or parties[.]

Non-Disclosure & Non-Competition Agreement, R. 54-2, PageID 834.

produced all documents, given that it had later produced several hundred more documents. The district court then granted a motion by NPF to extend discovery, held another status conference at which it noted that SY Dawgs's motion for sanctions was fully briefed, and asked the parties to confer and prepare a list of documents still needed. Soon after, it extended discovery again, this time until March 1, 2019.

The new discovery deadline brought yet another motion from SY Dawgs to compel discovery, filed at the end of December. In addition to alleging that NPF had provided insufficient or incomplete responses to several of SY Dawgs's requests, SY Dawgs argued that NPF had provided no documents responsive to the 45 other requests. That same day, Buchalter Law Firm attorneys Rick Waltman and J. Patrick Allen were admitted pro hac vice to represent NPF. And NPF made its own motion to compel discovery and sanction SY Dawgs. It alleged that SY Dawgs had failed to supplement its prior discovery responses and that doing so was a "willful and concerted effort to avoid the discovery process." The district court denied both parties' motions for discovery sanctions, but it left the sanctions issue open for revisitation after litigation concluded. And, yet again, the court granted SY Dawgs's motion to compel discovery. It also instructed NPF to respond to the discovery requests within 14 days or, in the alternative, certify to the district court that there is nothing responsive left to produce.

The 14-day deadline passed with no such certification from NPF. In February 2019, SY Dawgs renewed its motion for sanctions. It stated that "NPF and its *pro hac vice*-admitted counsel" had a "pattern of ignoring discovery obligations" and "flagrantly" ignoring both court orders compelling discovery. Def.'s Renewed Mot. for Sanctions, R. 161, PageID 3606. The district court granted the motion, ordering NPF to file an affidavit certifying that it had fully complied with the discovery request and also ordering NPF's counsel to file a "similar certification of compliance by counsel." The district court warned that "[f]ailure to comply with this Order will result in sanctions, up to and including dismissal of Plaintiff's action." And it warned yet again that "any monetary sanctions for Plaintiff's repeated discovery intransigence will be addressed at the conclusion of this action."

Despite that admonition, NPF never complied. So, SY Dawgs moved for the ultimate sanction—to dismiss the case under Federal Rule of Civil Procedure 37. In the meantime, NPF moved for an interlocutory appeal of the sanctions order before our court. But NPF later voluntarily dismissed the appeal, and SY Dawgs renewed its motion to dismiss. NPF also sought a writ of mandamus from our circuit, stating that it would be "irreparably harmed" by "fully respond[ing] to all of Respondents' discovery requests." Pet. for Writ of Mandamus, R. 180, PageID 4054.[2] Yet no protective order regarding these documents was sought by NPF from the district court, nor did the franchisor ever produce a privilege log. We denied the petition for mandamus. Finally, NPF moved for default judgment, stating that SY Dawgs was misrepresenting its efforts to cooperate with the court's orders and communicate.

After this last flurry of motions, NPF moved to voluntarily dismiss the case with prejudice in July 2019. The district court granted its request. But just before the dismissal, SY Dawgs moved again for attorneys' fees and costs. It stated that the court could award such relief under the fee-shifting provision of the non-competition agreement, the Federal Rules of Civil Procedure, and the court's inherent authority. SY Dawgs claimed that "NPF and its counsel [ ] abused the judicial and discovery process to harass and defame [SY Dawgs], their friends, family, and employers extrajudicially." Def.'s Mot. for Att'y Fees & Costs, R. 212, PageID 5933. It also stated that "[t]he [c]ourt should [ ] issue monetary sanctions against NPF and its counsel for 'repeated discovery intransigence' and other conduct in this case pursuant to the [c]ourt's inherent authority to do so." *Id.* at 5939. In response, the district court ordered NPF to explain its position on SY Dawgs's latest claim. After this briefing was completed, the motion was assigned to a magistrate judge.[3]

The magistrate judge ordered NPF and SY Dawgs to meet and confer on reasonable hourly rates for the work of the attorneys and legal assistants on the motion and the time

---

[2]At oral argument, the Buchalter Law Firm and individual attorneys' counsel conceded that there were more responsive documents in NPF's possession that were not produced in this litigation. Recording of Oral Arg. at 15:57–16:08.

[3]This part of the record contradicts the Buchalter Law Firm and individual attorneys' counsel's statement that they were not afforded briefing or given notice that sanctions were being sought against NPF's counsel before the hearing. Recording of Oral Arg. at 5:10–5:38.

expended by these individuals on this litigation.[4]  The parties then filed indices of these fees and costs, and oral argument on the motion was held before the magistrate judge in July 2020. During the hearing, SY Dawgs's counsel stated that it was seeking sanctions, in part, because of three missed appearances for depositions by NPF's counsel.[5]  Trans. of Oral Arg. Proceedings, R. 38, PageID 6110–12.  NPF's counsel explained that it had warned SY Dawgs "immediately when we knew that deposition could not go forward," but SY Dawgs contended that NPF did not propose alternative dates and missed the scheduled deposition multiple times.  *Id.* at 6113–16.

The magistrate judge recommended that SY Dawgs's motion for fees and costs be granted and that "NPF and its lawyers be ordered to pay $224,863.80 to [ ] SY Dawgs for NPF's discovery violations as a sanction under [Rule] 37 with post-judgment interest as calculated in the manner set forth in 28 U.S.C. § 1961[.]"  The magistrate judge also recommended that "NPF and its lawyers of record" should be jointly and severally liable.

The parties objected to the magistrate judge's report and recommendation.  The district court then explicitly informed NPF's counsel's firm—the Buchalter Law Firm—that it could file a supplemental objection on its own behalf.  The Buchalter Law Firm did so, and SY Dawgs responded.  After hearing oral arguments on the issue of the Buchalter Law Firm's liability for fees and costs, the district court gave both parties leave to file proposed findings of fact and conclusions of law.  In its filing, NPF stated that SY Dawgs's motion did not analyze why the Buchalter Law Firm or any individual attorneys should be liable.  It also stated that the magistrate judge's report did not identify three of the individual attorneys or the Buchalter Law Firm by name and only mentioned one attorney in a blockquote from the hearing transcript.  By contrast, SY Dawgs argued that the district court put NPF, the Buchalter Law Firm, and the attorneys of record on notice several times throughout the litigation when it referenced "NPF and its counsel." It also pointed to the hearing the magistrate judge conducted on the motion, at

---

[4]This was the second order from the magistrate judge on this topic.  NPF allegedly did not engage in a meet-and-confer.

[5]SY Dawgs clarified that it was seeking sanctions against "[t]he Plaintiff, its parent entity, NPF Media, and their counsel, the Buchalter firm."  *Id.* at 6111.

which SY Dawgs stated that it was seeking sanctions against "[t]he Plaintiff, its parent entity, NPF Media, and their counsel, the Buchalter firm."

After this briefing, the district court granted SY Dawgs's motion for fees and costs. It held:

> NPF is liable to SY Dawgs for attorneys' fees, expenses and costs in the amount of $480,546.85, pursuant to Paragraph 14 of the Parties' Non-Disclosure and Non-Competition Agreement. Of that amount, NPF, Buchalter and the Buchalter attorneys of record are hereby jointly and severally liable for attorneys' fees, expenses and costs in the amount of $287,248.77, plus pre-judgment interest, and post-judgment interest to accrue starting 30 days from the date of this Order, as calculated in the manner set forth in 28 U.S.C. § 1961, as discovery sanctions.

The district court also noted that Tracy Warren, Kathryn Boyd Fox, Rick Waltman, and J. Patrick Allen were the Buchalter Law Firm's attorneys of record during the discovery disputes underlying SY Dawgs's motion.

The district court gave the Buchalter Law Firm three months to file or prepare additional motions or briefs on the issue of the firm's liability, but the Buchalter Law Firm never did so. The district court noted its repeated admonitions to NPF's counsel, the briefing ordered, the time afforded to respond, the magistrate's report, and the hearings that had been held. In light of these facts, the district court determined that its proceedings satisfied due process and put NPF's attorneys and the Buchalter Law Firm on notice of sanctions.[6] Mem. Op. re Def.'s Mot. for Fees & Costs, R. 262, PageID 6438–42.

The district court also analyzed the potential bases for compelling payment of the fees and costs. It first pointed to the fee-shifting provision in the parties' non-disclosure and non-competition agreement, which allows "all costs, expenses, and reasonable attorneys' fees incurred" to be paid to the "successful party." It next cited Federal Rule of Civil Procedure 41(a)(2) and Ohio Civil Rule 41(A)(2), and corresponding Ohio case law, for the proposition that "[a] voluntary dismissal with prejudice renders the opposing party a prevailing party." And it

---

[6]The Buchalter Law Firm and individual attorneys' counsel at oral argument stated that their sanctionable conduct was not listed in the district court's order. Recording of Oral Arg. at 32:51–33:06. As this record shows, that statement was untrue.

concluded that NPF is liable for all of SY Dawgs's costs, expenses, and reasonable attorneys' fees incurred.

The district court then analyzed whether Federal Rule of Civil Procedure 37(d) authorized the award of discovery sanctions. It agreed with the magistrate's conclusion that NPF and its attorneys failed to cooperate in discovery, even after repeated warnings from the court, and that NPF's failure "seriously prejudiced" SY Dawgs. It held NPF, the Buchalter Law Firm, and the individual attorneys liable for attorneys' fees and costs as Rule 37 discovery sanctions. The district court also noted that it was "inclined to award fees under its inherent powers," but that the fee-shifting provision and Rule 37 would fully compensate SY Dawgs.

Finally, the district court noted that while NPF firmly maintained that it owed SY Dawgs nothing for attorneys' fees and costs, the franchisor had not challenged the reasonableness of SY Dawgs's billing rates or hours expended if such fees and costs were ordered. This timely appeal followed.

## II.

On appeal, NPF's interested parties[7] present what can be categorized as four issues. First, Appellants argue that they were not afforded due process before sanctions were imposed against them. Second, they argue that the district court abused its discretion in issuing discovery sanctions jointly and severally against them. Third, they challenge the amount of sanctions awarded. Last, Appellants argue that their case, if remanded, should be remanded to a different judge.

### A. Due Process

On appeal from an order of sanctions, we review procedural due process claims de novo. *See, e.g.*, *KCI USA, Inc. v. Healthcare Essentials, Inc.*, 797 F. App'x 1002, 1006 (6th Cir. 2020). At bottom, a court must give notice to the party facing sanctions and an opportunity to be heard. *Wilson-Simmons v. Lake Cnty. Sheriff's Dep't*, 207 F.3d 818, 822 (6th Cir. 2000). But when

---

[7]We refer to the interested parties who brought this appeal (J. Patrick Allen, Kathryn B. Fox, Rick A. Waltman, Tracy A. Warren, and the Buchalter Law Firm) as "Appellants" for the rest of this opinion.

exercising either its inherent power or its authority to sanction under Rule 37, a district court need not give formal notice or hold a full evidentiary hearing. *Id.* (citing *Cook v. Am. S.S. Co.*, 134 F.3d 771, 774 (6th Cir. 1998)) (inherent power); *see also Prime Rate Premium Fin. Corp., Inc. v. Larson*, 930 F.3d 759, 772 (6th Cir. 2019) (Rule 37). So long as a party is given notice by an opposing party and has the chance to brief the issue, no procedural due process violation occurs. *See KCI*, 797 F. App'x at 1006–08.

Appellants argue, though, that Tracy A. Warren, Kathryn B. Fox, Rick A. Waltman, and J. Patrick Allen (the individual attorneys) received no notice of the sanctions against them individually. They also argue that neither the individual attorneys nor the Buchalter Law Firm received sufficient notice of the discovery sanctions or the basis for the sanctions.[8] Lastly, they argue that the individual attorneys and the Buchalter Law Firm were not given a meaningful opportunity to contest the discovery sanctions.

We disagree, turning first to Appellants' argument about notice and the basis for sanctions against the individual attorneys. SY Dawgs specifically listed "NPF and its *pro hac vice*-admitted counsel" in its renewed sanctions motion, stating that they have a "pattern of ignoring discovery obligations" and "flagrantly" ignoring the district court's orders compelling discovery. Def.'s Renewed Mot. for Sanctions, R. 161, PageID 3606. Warren, Fox, Waltman, and Patrick are the only pro hac vice-admitted counsel for NPF in this case. What's more, the district court ordered NPF to file an affidavit certifying that it had fully complied with the discovery request *and* ordered NPF's counsel to file a "similar certification of compliance by counsel." Order re Def.'s Renewed Mot. for Sanctions, R. 171, PageID 3916. The court put those individual attorneys on notice that sanctions were on the table when it warned them that "[f]ailure to comply with this Order will result in *sanctions*, up to and including dismissal of Plaintiff's action." *Id.* (emphasis added).

---

[8]SY Dawgs argues that Appellants forfeited a related argument on appeal: "[T]he district court awarded $60,000 in attorney[s'] fees based solely on an unsolicited and unsubstantial post-hearing affidavit without notice or an opportunity to respond." We disagree. Appellants did argue notice and an opportunity to respond in their supplemental objections. As for this specific affidavit, it was filed on the district court's docket for all to see. And there is no indication on the record that Appellants were denied an opportunity to respond to it.

Additionally, in SY Dawgs's final motion for sanctions, it reiterated that "NPF and its counsel [ ] abused the judicial and discovery process to harass and defame [SY Dawgs], their friends, family, and employers extrajudicially." Def.'s Mot. for Att'y Fees & Costs, R. 212, PageID 5933. SY Dawgs also stated that "[t]he [c]ourt should [ ] issue monetary sanctions against NPF and its counsel for 'repeated discovery intransigence' and other conduct in this case pursuant to the [c]ourt's inherent authority to do so." *Id.* After briefing and a hearing, the magistrate judge recommended sanctions against the Buchalter Law Firm and *its individual attorneys* based on multiple docket entries exposing the "shameful litigation." Appellants then had the opportunity to brief and have a hearing *again*, this time for the sole purpose of addressing the individual attorneys' liability.

Despite that evidence, Appellants claim the district court had to spell out specific discovery misconduct committed by each individual attorney when it gave notice. We have no such requirement. *See KCI*, 797 F. App'x at 1006 ("While formal notice detailing the penalties is not required, KCI or the court had to provide notice that sanctions were being sought against the individual attorneys and not just the firm." (cleaned up)); *see also id.* ("Notice from an opposing party would suffice." (citation omitted)). And, logically, why would we? SY Dawgs most likely would not know which individual attorney—Warren, Fox, Waltman, or Patrick— failed to attend the scheduled depositions or produce the responsive documents. And neither would the district court have known. It is enough that the individual attorneys were the pro hac vice-admitted counsel of record during the violation of the court's discovery orders. But even if it were not, Appellants were told time-and-time again why sanctions were being brought against them and against whom.

Likewise, the Buchalter Law Firm received sufficient notice that sanctions were being sought and about the basis for those sanctions. As Appellants acknowledge, SY Dawgs opened the hearing before the magistrate judge by identifying the legal bases—Federal Rules and the court's inherent authority—and the factual bases on which it sought fees. Appellants' Br. at 6 (citing Trans. of Oral Arg. Proceedings, R. 238, PageID 6095–96). SY Dawgs then stated that it was seeking sanctions against "[t]he Plaintiff, its parent entity, NPF Media, and their counsel, *the Buchalter firm.*" *Id.* at 6111 (emphasis added). The district court told the "Buchalter Law Firm"

that it may supplement its objections, and the law firm did so.  Mem. Op. & Order, R. 246; Pl.'s Supp. Objs., R. 247.  In response, SY Dawgs reiterated that the discovery misconduct happened on "Buchalter's watch" and that these actions were "things NPF did through Buchalter."  Def.'s Resp. to Supp. Objs., R. 248, PageID 6288; *see also id.* at 6294 (stating that "Defendants have been defining 'Buchalter' as the law firm and the individual attorneys").  Appellants' argument that the law firm did not receive notice or the basis for the sanctions is meritless.

The individual attorneys and the law firm were also given an opportunity to be heard. Again, after the magistrate judge issued his report and recommendation—which stated that "NPF and its lawyers of record" should be jointly and severally liable—the district court allowed for objections to the report, supplemental briefing, and a hearing.  Magistrate Report & Recommendation, R. 239, PageID 6131; Mem. Op. & Order, R. 246; Mins. of Proceedings, R. 256; *see also* Appellants' Br. at 12–13.  Also, before the hearing, the district court specifically highlighted the issue of the Buchalter Law Firm's liability for fees and costs.  Mins. of Proceedings, R. 256.  So while a formal hearing was not required, the individual attorneys and the law firm received one, removing all doubt about the opportunity to be heard.  Appellants' continued argument that they did nothing sanctionable does not mean that they were not put on notice and given the opportunity to be heard.[9]  *See, e.g.*, *Dell, Inc. v. Elles*, No. 07-2082, 2008 WL 4613978, at *3 (6th Cir. June 10, 2008) (noting the district court's allowance of "numerous opportunities" to comply with its orders and hearings it held on the issue).

B.  Federal Rule of Civil Procedure 37

Appellants next argue that the district court abused its discretion in imposing sanctions against the Buchalter Law Firm and the individual attorneys under Federal Rule of Civil

---

[9]Appellants' case is distinguishable from *KCI*, on which they rely.  In *KCI*, the sanctioned party was not given a chance for responsive briefing or other opportunities to be heard after receiving notice of who might be sanctioned.  797 F. App'x at 1007–08.  Unlike the counsel in that case, the Buchalter Law Firm and the individual attorneys were counsel of record at all times pertinent to the sanctions briefings and discovery misconduct and have had opportunities to brief and orally argue their points before the court.  We share the district court's frustration with Appellants' refusal to acknowledge this point.  *See* Trans. of Mot. Hearing Proceedings, R. 258, PageID 6339–40 ("So I'm not quite sure how you're saying that you don't have—you weren't afforded due process.  You've been given an ample opportunity.  In fact, as you state, it's been six months since the Magistrate Judge's report and recommendation, and I have held off on making a ruling on that report and recommendation to allow—you filed two responses to that, and then you asked for this specific hearing, and here we are, so go for it.").

Procedure Rule 37(d) because the award lacked an appropriate basis.**10**  They allege that the district court failed to analyze whether the award was unjust or whether Appellants' conduct was substantially justified.  They also contend that Rule 37 does not allow for sanctions against a law firm.**11**  We will address the Rule 37 sanctions against the individual attorneys before addressing the sanctions against the law firm.

### 1.  Sanctions Against the Individual Attorneys

Appellants proffer what can be categorized as two arguments about the individual attorneys: (1) there was not an appropriate factual basis for sanctions, and (2) the sanctions award was unjust.  Both lack merit.

We review a district court's imposition and amount of sanctions under an abuse of discretion standard.  *EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 978 F.3d 418, 447 (6th Cir. 2020) (citations omitted).  "A district court abuses its discretion when it relies upon clearly erroneous findings of fact, applies the law improperly, or uses an erroneous legal standard." *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016) (citation omitted).  When we review an award of fees and costs, "[s]ubstantial deference 'is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'"  *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

Appellants argue that the district court failed to articulate the basis of its Rule 37(d) sanctions against the individual attorneys.  But that argument has no support in the record.  The district court was clear about both the discovery misconduct and the prejudice it imposed on SY Dawgs.  It agreed with the magistrate judge's report that the docket it highlighted lists the

---

**10**NPF also argues that SY Dawgs never identified Rule 37 in its motion for fees and costs.  This is untrue. Def.'s Mot. for Att'y Fees & Costs. R. 212, PageID 5938 (arguing that the court should grant SY Dawgs's "motions to dismiss and award sanctions thereunder"); Supp. Mem. in Support of Mot. to Dismiss, R. 201 (moving to dismiss pursuant to Rule 37).

**11**We agree with SY Dawgs that Appellants forfeited one of their arguments—that "Rule 37 sanctions are authorized only where a party entirely fails to respond to discovery." *See United States v. Montgomery*, 998 F.3d 693, 698 (6th Cir. 2021) (citation omitted); *see also Jones Bros., Inc. v. Sec'y of Lab.*, 898 F.3d 669, 677 (6th Cir. 2018).

discovery violations that prejudiced SY Dawgs. Mem. Op. re Def.'s Mot. for Fees & Costs, R. 262, PageID 6437–38. The magistrate judge listed, in great detail, Appellants' discovery violations. Magistrate Report & Recommendation, R.239, PageID 6150–64. And the magistrate judge stressed Appellants' failure to show up for scheduled depositions, failure to follow the district judge's briefing schedule, filing of procedurally improper motions, failure to properly respond to subpoenas, failure to certify compliance, and misrepresentation of filings. The magistrate judge also discussed how this allowed Appellants two bites at the apple on some motions and impeded resolution of the case. The district court highlighted additional misconduct, listing the law firm's (and by necessity, the individual attorneys') rejection of SY Dawgs's offer for documents and the unnecessary continuation of a hearing for a second time due to "sudden computer server issues." Mem. Op. re Def.'s Mot. for Fees & Costs, R. 262, PageID 6427–28. It also noted Appellants' misrepresentation of compliance with the court's order to produce documents. Appellants argue that the district court should have precisely articulated the factual basis for sanctions for each individual attorney. But, as stated prior, we do not require such specificity.

The district court also agreed with the magistrate judge's calculations of fees and costs. Mem. Op. re Def.'s Mot. for Fees & Costs, R. 262, PageID 6442–43. And "[w]hen the district court, as it did here, provides clear and concise reasons for its fee award, we give its award substantial deference." *United States ex rel. Tingley v. PNC Fin. Servs. Grp., Inc.*, 705 F. App'x 342, 348 (6th Cir. 2017) (citing *Gonter v. Hunt Valve Co.*, 510 F.3d 610, 616 (6th Cir. 2007)). The district court found SY Dawgs's billing rates reasonable and in line with market rates, and it noted that Appellants did not challenge that conclusion. It held NPF, the Buchalter Law Firm, and Buchalter's individual attorneys jointly and severally liable for attorneys' fees, expenses, and costs in the amount of $287,248.77 plus interest. While it agreed with imposing only 75% of the fees pre-July 2019 to prevent overcounting, it noted that there should be no reduction from July 2019—when NPF voluntarily dismissed the case—forward, as those fees could all be attributed to the litigation over sanctions. When explaining the calculations, the magistrate judge reviewed the billing rates per entry to ensure their reasonableness, pulled out the entries related to Appellants' discovery violations, added the total expenses, reduced the amount by 25%, and added prejudgment interest calculated under 28 U.S.C. § 1961's use of a weekly average one-

year constant maturity Treasury yield.  Magistrate Report & Recommendation, R.239, PageID 6165–73.  So Appellants' argument that the district court failed to cite specific provisions of the evidentiary record in imposing the sanctions is simply wrong.  And Appellants' argument that the district court included costs and fees not incurred as a direct result of the discovery violations is likewise unfounded.**12**  The district court did not abuse its discretion in the award and amount of sanctions imposed on the individual attorneys.

Appellants argue that the judgment was unjust.  In their view, the district court had to make a record articulating whom the sanctions were imposed on and why.  Again, however, the district court did just that.  And Appellants have provided no support for the proposition that the district court needs to match up every dollar of sanctions to every individual party sanctioned.  A rough estimate is enough, and there is "no precise rule for making these determinations." *Hensley*, 461 U.S. at 436.

Appellants finally contend that their conduct was justified.  Conduct is "'substantially justified' if it raises an issue about which there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action." *Doe v. Lexington-Fayette Urb. Cnty. Gov't*, 407 F.3d 755, 766 (6th Cir. 2005) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  As the district court and magistrate judge explained, the individual attorneys' conduct was not zealous advocacy, but an abuse of the judicial process and a waste of resources.  Appellants cannot make misrepresentations to the court about producing documents, unreasonably delay resolution of their claims, and engage in other improper uses of the court and then claims that those actions are justified.

The district court's sanction of the individual attorneys under Rule 37(d) was not an abuse of discretion, and we affirm the sanctions against them.

---

**12**Appellants also argue that the district court abused its discretion in looking at an unauthenticated demonstrative exhibit and a post-hearing affidavit in calculating the award.  But Appellants did not challenge these exhibits until now, although they had ample time to respond below.  *See, e.g.*, Magistrate Report & Recommendation, R.239, PageID 6166 ("This determination [of the sanctions amount] was made more difficult by the fact that NPF continues to insist that it has violated no rule or order and, therefore, owes nothing.  This strategy now backfires on NPF and its lawyers.").  They therefore forfeited this argument. *See Montgomery*, 998 F.3d at 698 (citation omitted).

2. Sanctions Against the Buchalter Law Firm

Whether a district court may sanction a law firm under Rule 37 is a question we have not addressed before now. Because it involves the interpretation of a federal rule, we also review this question de novo. *BDT Prods.*, 602 F.3d at 749–50.

We start with the text of Rule 37(d). *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 750 n.9 (1980). It states:

(1) In general.

    (A) Motion; Grounds for Sanctions. The court where the action is pending may, on motion, order sanctions if:

        (i) a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4) fails, after being served with proper notice, to appear for that person's deposition; or

        (ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.

    (B) Certification. A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action.

(2) Unacceptable Excuse for Failing to Act. A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c).

(3) Types of Sanctions. Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)–(vi). Instead of or in addition to these sanctions the court must require the party failing to act, the attorney advising the party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d).

So when a failure to comply with a discovery rule or order occurs, the court must require the *party* failing to act, "the *attorney* advising that party, or *both* to pay the reasonable expenses." Fed. R. Civ. P. 37(b)(2)(C), (d)(3) (emphasis added); *see also* Fed. R. Civ. P. 37(a)(5)(A) ("[T]he court must, after giving an opportunity to be heard, require the *party* or *deponent* whose conduct

necessitated the motion, the *party* or *attorney* advising that conduct, or *both* to pay the movant's reasonable expenses incurred in making the motion[.]" (emphasis added)). Rule 37 makes no mention of a party's law firm but explicitly lists a party and a party's attorney. The canon of expressio unius est exclusio alterius—the express mention of one thing excludes others—thus supports the view that Rule 37 does not provide for sanctions against a law firm. *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002).

This reasoning also tracks the Supreme Court's reasoning in a prior case about sanctions. In *Pavelic & LeFlore v. Marvel Entertainment Group*, the Court considered whether sanctions were permissible against a law firm under an earlier version of Rule 11.[13] 493 U.S. 120, 121 (1989). Pointing to the rule's language that sanctions were permitted only against "the person who signed" the offending document, the Court concluded that a law firm cannot be the one to sign papers, so the rule must mean that sanctions are only permitted against the individual signer. *Id.* at 124–25. The Court explained that Rule 11 departed from common-law assumptions of delegability, partnership, and agency, and it noted that "[w]here the text establishes a duty that cannot be delegated, one may reasonably expect it to authorize punishment only of the party upon whom the duty is placed. We think that to be the fair import of the language here." *Id.* at 125.

Likewise, reading Rule 37 to allow sanctions against a party and its attorney, but not the law firm, aligns with how we treat sanctionable entities in other areas of the law. For example, for sanctions under 28 U.S.C. § 1927—when a party prolongs proceedings "unreasonably and vexatiously"—we have held that such sanctions may be imposed only "on individual attorneys, and not law firms." *BDT Prods.*, 602 F.3d at 757. We explained that "[e]ven if firms can admittedly be personified in a literary sense through briefs, there is no reason to consider a law firm a 'person' under the statute. More importantly, law firms are not 'admitted' to 'conduct cases' in court." *Id.* at 751.

---

[13]Note that Rule 11 was amended in 1993 to expressly allow sanctions for law firms. Fed. R. Civ. P. 11(c)(1) ("If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, *law firm*, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, *a law firm must be held jointly responsible* for a violation committed by its partner, associate, or employee." (emphasis added)).

Like § 1927 and the old Rule 11, Rule 37 makes no mention of law firms. And it confines liability to "the party failing to act, the attorney advising the party, or both" for a failure to appear for a deposition or serve written responses. Fed. R. Civ. P. 37(d)(3). We thus hold that Rule 37 does not allow for sanctions against a law firm, unless it is a party, and reverse the district court's judgment in part.

While we cannot sustain sanctions against the Buchalter Law Firm under Rule 37, the district court could impose sanctions against the firm pursuant to its inherent authority. To sanction in this manner, the district court must find that the party litigated "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). The district court could also impose sanctions "in the interest of justice." *Ray A. Scharer & Co. v. Plabell Rubber Prods., Inc.*, 858 F.2d 317, 320 (6th Cir. 1988). In a footnote in its opinion, the district court expressed an inclination to impose sanctions under its inherent authority if not for its mistaken belief that it could sanction the law firm under Rule 37. Mem. Op. re Def.'s Mot. for Fees & Costs, R. 262, PageID 6438 n.3. We remand to the district court to determine whether it deems sanctions against the Buchalter Law Firm to be appropriate under the district court's inherent power. *See BDT Prods.*, 602 F.3d at 756.

C. Reassignment on Remand

We finally turn to Appellants' request that we reassign their case on remand. When deciding whether to reassign a case to a different judge, we consider three factors:

> (1) whether the original judge would reasonably be expected to have substantial difficulty in putting out of his or her mind previously expressed views or findings;
>
> (2) whether reassignment is advisable to preserve the appearance of justice; and
>
> (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.

*United States ex rel. Williams v. Renal Care Grp., Inc.*, 696 F.3d 518, 532–33 (6th Cir. 2012) (quoting *Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006)). "Reassignment is '[a]n extraordinary power,' which we hesitate to invoke." *Howe v. City of Akron*, 801 F.3d 718, 756 (6th Cir. 2015) (quoting *Lavin v. Husted*, 764 F.3d 646, 652 (6th Cir. 2014)).

Appellants seek reassignment because of "hostility exhibited" by both the district court and the magistrate judge.  But all Appellants point us to in the record is different times the district court or magistrate judge ruled against them.  *See, e.g.*, Appellants' Br. at 51 ("The District Court did not distinguish the conduct of NPF and prior counsel, undertaken long before the Law Firm and Individual Attorneys entered their appearance," and "[t]he District Court increased the amount of fees for which NPF and the Law Firm and Individual Attorneys were jointly and severally liable on dubious evidence[.]").  Mere unfavorable rulings are not a basis for reassignment of a judge.  Neither the district judge nor the magistrate judge has shown any bias for or against either party or an inability to put aside their expressed views and findings.  *See, e.g.*, *Liteky v. United States*, 510 U.S. 540, 555–56 (1994).  Furthermore, the case has a long and complex record, and reassignment would entail waste and duplication of effort.

III.

We affirm the district court in part and reverse in part, and we remand the case to the district court for further proceedings consistent with this ruling.